## PEERLESS PRINTING CO. v. GENELLA.
### No. 16955.

Court of Appeal of Louisiana. Orleans.

May 22, 1939.

Milling, Godcheux, Saal & Milling and M. Truman Woodward, Jr., all of New Orleans, for appellant.

Julius C. Pearlstine and Norman R. Tilden, both of New Orleans, for appellee.

JANVIER, Judge.

George L. Mayer, who conducts his printing establishment in New Orleans as Peerless Printing Company, alleges that Louis J. Genella, Jr., is indebted to him in the sum of $265.75 as the balance due for printing certain pamphlets and for furnishing certain letterheads and for rent of office space.

Genella, in effect, admitted that the printing was done as alleged, but protested that the charges made were not in accordance with the verbal agreement which he had with Mayer. He seems to have admitted the correctness of the charges for letterheads, but he denied any indebtedness for use of office space. In his answer he averred that in many instances the pamphlets which Mayer printed for him were so carelessly prepared and so much delayed that he found difficulty in selling them to the public, and he claimed that he had thus sustained damage in the sum of $1,000. By reconventional demand he prayed for judgment for this $1,000 and he also prayed for the return of $167, which he alleged he had paid Mayer on account of the entire indebtedness. He further averred in his reconventional demand that he had been principally responsible for securing the right to print and distribute certain high school football programs and had done most of the work in connection therewith and he charged that Mayer had not paid him for this work and that, on a quantum meruit basis, he should receive at least $250. He prayed for this additional amount in reconvention.

There was judgment for plaintiff, Mayer, for $199.75, and the reconventional demand was dismissed in all particulars. Genella has appealed.

The record shows that, during the early part of May, 1935, Genella conceived the idea that there was money to be made in the preparation and sale of a small monthly pamphlet to be known as the "Louisiana Authors Journal", of which he would be the editor, owner, distributor and sole proprietor. He had no funds and owned no printing establishment and approached Mayer for help in getting out the so-called journal. He states that Mayer agreed on a price of $30 per issue of 500 copies each, the pamphlet to contain four pages, and that Mayer also agreed that, since the

venture was merely an experiment, he would accept a payment of $15 cash on each issue and would not hold Genella liable for the balance unless the venture should prove successful.

Mayer concedes that the price agreed upon was $30 per issue and that he agreed that Genella would pay only $15 cash when each of the early issues was received, but he denies emphatically that he agreed not to charge the additional $15 unless the publication should prove successful, and states that Genella said to him that he would pay $15 in cash and that, after about six months, he would pay the balance regardless of success or failure.

Four issues were brought out, apparently with little success, and Genella conceived the idea that, by increasing the number of copies to 2,000, he could make the venture profitable, and accordingly, without any new negotiations with Mayer, he ordered and received 2,000 copies of the fifth issue. He also ordered and received 2,000 copies of the sixth issue and then, for some unaccountable reason—the record shows that he had met with little response from the literary public,—he decided to increase the size of his pamphlet to eight pages, to broaden its scope and character, and to give it the more extensive title, "American Digest". The seventh number, still without new negotiations with Mayer, consisted of 2,000 copies of eight pages each.

Mayer, in addition to the agreed price of $30 each for the first four numbers, charged Genella $46.50 for each of the fifth and sixth issues of 2,000 copies, and $125 for the seventh issue of 2,000 copies of eight pages each.

The damage which Genella, in his answer, claimed to have sustained by reason of errors and of tardiness, we find it unnecessary to consider, for in this court he has filed an appearance styled a "remittitur", in which he states that he "hereby formally remits that portion of his reconventional demand that relates to a claim for damages against the plaintiffs and appellees in connection with the publication of his journal, and likewise formally remits that portion of his reconventional demand that relates to a claim for the recovery of the sums already paid by him to the said plaintiffs and appellees".

The claim which plaintiff, in his petition, makes for rent of office space is likewise not before us because, though it was rejected in the court below, plaintiff has neither appealed nor answered the appeal of defendant.

Thus, we need only consider, first, whether the charges made for printing were correct, and, second, whether defendant is due any amount for services rendered in connection with the printing and sale of the high school football programs.

The evidence concerning the original agreement is overwhelmingly in favor of plaintiff. There is nothing whatever in the record to give the slightest impression that plaintiff agreed to accept $15 cash and to waive the balance if the venture should not prove successful.

With reference to the increase in charges, defendant maintains that plaintiff was so impressed by the success which the venture was meeting, that he voluntarily agreed to increase the number of copies and later to increase the size of each pamphlet, with the understanding that he would be equally interested with Genella in the venture and that he would make no additional charge for these later numbers. The record here, also, is overwhelmingly in favor of the plaintiff and does not contain any evidence which could possibly be tortured into an agreement by plaintiff that he would assume any interest in the pamphlet, or that he would not make any additional charge based on the increased number of copies, or on the increased size of the pamphlet. And the record does convince us that the charges made for these later issues were consistent with the increase in the size and with the increase in number of copies, so that there is nothing further which merits attention except the charge of defendant that he has not been paid for services rendered in connection with the preparation of football programs.

But the record here, also, shows, beyond the shadow of a doubt, that this venture belonged entirely to and was sponsored solely by the plaintiff and that, though the defendant, Genella, did do some little work in connection with the issuance of these programs and with the disposal thereof, he has been paid for such slight services as he rendered.

The amount originally sued for was $265.75. Plaintiff concedes that he did not give defendant credit for $6 which was paid on account and which would reduce the amount to $259.75. The claim for $60 for rent of office space at $5 per month

was disallowed. Deducting this from the amount claimed leaves a balance of $199.75, for which judgment was rendered in favor of plaintiff.

As we have said, the record abundantly sustains plaintiff's contention and, accordingly, it is ordered, adjudged and decreed that the judgment appealed from be and it is affirmed at the cost of appellant.

Affirmed.